UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES J. MORYL,

                Plaintiff,

    v.                              **DECISION AND ORDER**
                                       **06-CV-00336**

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.      Plaintiff James J. Moryl challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff first alleged a disability since February 2002, due to a heart condition, high blood pressure, and stress.  He then amended his onset date to January 2000.   Plaintiff contends that his impairments have rendered him unable to work and he avers that he is entitled to payment of disability insurance benefits ("DIB") under the Act.

2.      Plaintiff filed an application for DIB on October 21, 2002.   His application was denied initially and, under the prototype model of handling claims without requiring a reconsideration step, Plaintiff was permitted to appeal directly to the ALJ.  See 65 Fed. Reg. 81553 (Dec. 26, 2000).   Plaintiff and his counsel attended a hearing before ALJ Thomas P. Zolezzi on March 2, 2004. The hearing was continued on May 25, 2004, at which time Plaintiff, his counsel, and a vocational expert (VE) were present.  The ALJ issued a finding of "not disabled" on July 20, 2004.  After a request by Plaintiff to the Appeals Council, the Appeals

Council vacated the decision and remanded the case to the ALJ for further development.  Plaintiff, his counsel, and the VE appeared again before ALJ Thomas P. Zolezzi on April 8, 2005 for a supplemental hearing.  ALJ Zolezzi reviewed the case *de novo* and on June 24, 2005, issued a finding that Plaintiff was not under a disability.  On February 24, 2006, the Appeals Council denied Plaintiff's request for review.

3.     On March 15, 2006, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court review the decision of the ALJ pursuant to Section 205(g) and 1631(c)(3) of the Act, modify the decision of the defendant, and grant DIB benefits to Plaintiff.[1]  After transfer of Plaintiff's file from Syracuse, NY to Albany, NY, Defendant filed an answer to Plaintiff's complaint on September 21, 2006.   In her answer, Defendant requested the Court dismiss Plaintiff's complaint. On October 18, 2006, Plaintiff filed Plaintiff's Brief requesting reversal of Defendant's decision of denial of DIB to Plaintiff, and remand to Defendant for calculation of benefits.   On December 4, 2006, Defendant filed a Memorandum of Law In Support Of The Commissioner's Motion for Judgment on the Pleadings[2] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.    After full briefing, this Court has deemed oral argument unnecessary and has taken the motions under advisement.

4.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§405(g), 1383(c)(3);

---

[1] The ALJ's June 24, 2005 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceedings as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).

Rather, the Commissioner's determination will only be reversed if it is not

supported by substantial evidence or there has been legal error.  See Grey v.

Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d

Cir. 1979).  Substantial evidence is that which amounts to "more than a mere

scintilla," and it has been defined as "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  Richardson v. Perales,

402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where

evidence is deemed susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685

F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported

by substantial evidence, a reviewing court considers the whole record, examining

the evidence from both sides, because an analysis of the substantiality of the

evidence must also include that which detracts from its weight."  Williams on

Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's finding must be sustained "even where

substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the

[Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

In other words, this Court must afford the Commissioner's determination

considerable deference and will not substitute "its own judgment for that of the

[Commissioner], even if it might have justifiably reached a different result upon a

*de novo* review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. <u>See</u> 20 C.F.R §§404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in <u>Brown v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.      The five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); <u>see</u> <u>also</u> <u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §404.1520.

8.      While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. <u>See</u>

Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff was not engaged in substantial gainful activity since the alleged onset of his disability (R. at 17, 23)[3]; (2) Plaintiff's obesity and his cardiovascular and musculoskeletal impairments are considered to be "severe" within the meaning of the Act (R. at 17, 23); (3) Plaintiff's impairments do not meet or equal in severity the clinical criteria necessary for finding a disabling impairment listed in Appendix 1, Subpart P, Regulation Number 4 (R. at 17, 23); (4) Plaintiff retained the residual functional capacity to perform the full range of light work, which allows him to lift up to twenty pounds, and walk and stand for approximately six hours in an eight-hour workday, and which jobs require the ability to change positions as needed, from sitting to standing, approximately every thirty minutes, but should not work around machinery or heights, should avoid stairs, ladders and scaffolds (R. at 18, 23); and (5) Plaintiff is unable to perform his past relevant work as a steelworker, city assessor, or realtor (R. at 21, 23).   Given Plaintiff's age, high school

---

[3] Citations to the underlying administrative record are designated as "R."

education, and semi-skilled and skilled transferable work experience, the ALJ determined that Medical-Vocational Rules 202.15 and 202.07, vocational expert testimony, and Social Security Rulings 96-2p, 96-5p, 96-6p, 96-7p, and 96-8p directed a finding of "not disabled" (R. at 22-24).

10.    In the instant case, Plaintiff advances two primary challenges to the ALJ's determination: that there is not substantial evidence to support ALJ's assessment of Plaintiff's work capacity and that Plaintiff does not possess transferable work skills.  Plaintiff's first contention is that there is not substantial evidence to support the ALJ's residual functional capacity ("RFC") – namely, that there is not substantial evidence that Plaintiff can perform light or sedentary work[4].  Plaintiff argues that there is no proof that he can perform the extensive standing and walking required for light work and that the ALJ accorded too much weight to a non-examining physician, and too little weight to Plaintiff's treating physician.  In fact, the ALJ did rely on the findings of the treating cardiologists and a non-treating disability physician rather than the conclusions of Plaintiff's general practitioner.  After carefully examining the administrative record, this Court finds that substantial evidence in the record supports the ALJ's decision in this case regarding Plaintiff's medical condition.  Specifically, the medical

---

[4] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. §404.1567(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §404.1567(b).

evidence supports the ALJ's determination that Plaintiff is not disabled within the meaning of the Act. The Court finds that, in regard to this issue, the ALJ thoroughly examined the record and accorded proper weight to all of the medical findings.

11.    Although not stated expressly, the Court construes Plaintiff's argument regarding insufficient weight being given to the treating physician, and excessive weight being given to a non-examining physician, to be that the treating physician rule was improperly applied.   According to the "treating physician rule"[5], the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).  Stated differently, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well supported, see 20 C.F.R. §§404.1527(d)(3), and the less consistent an opinion is with the record as a whole, the less weight it is to be given.  See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4).  Under 20 C.F.R. §404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4)

---

[5] "The 'treating physician rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. §404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

7

consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court.  See de Roman, 2003 WL 21511160, at *9 (citing 20 C.F.R. §404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

        12.    Having reviewed the record, the Court finds no reversible error in the ALJ's treatment of Dr. Gregorian's opinion in light of the objective medical findings in the record.  Rather, the ALJ's decision reflects a thorough review of the medical evidence at issue.   Ultimately, the ALJ relied upon, among other things, the determination of Dr. Auerbach, a State Agency medical examiner and disabilities claims expert, that Plaintiff retained the RFC for light work (R. at 19, 20).  The ALJ's partial reliance on the assessment of Dr. Auerbach was not, as Plaintiff contends, erroneous.  It is well settled that an ALJ is entitled to rely upon the opinions of the state agency's medical consultants, since the consultants are deemed to be qualified experts in the field of Social Security disability.  See 20 C.F.R. §§404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").  Such reliance is particularly appropriate where, as here, the opinion of the state agency physician is supported by the weight of the record evidence, including the objective medical findings of Plaintiff's own treating cardiology physicians.

On the other hand, the opinion of Dr. Gregorian, Plaintiff's treating general practitioner, was inconsistent with both the record as a whole, as well as Dr. Gregorian's own medical records.  It is well settled that the less consistent an opinion is with the record as a whole, the less weight it is to be given.  See 20 C.F.R. §§404.1527(d)(4), 416.927(d)(4).  For example, Dr. Gregorian opined on September 24, 2002, that Plaintiff's coronary heart disease appeared stable (R. at 186).  In an evaluation form completed August 13, 2003, Dr. Gregorian stated that Plaintiff had coronary heart disease with angina that was exacerbated by activity (R. at 225).  While the Court allows that Plaintiff's coronary disease may have progressed to the point of that he was having symptoms of angina, we do not agree that the ALJ acted improperly in minimizing the weight given to such an opinion, absent any clinical findings, or references, or further elaboration by Dr. Gregorian.  Dr. Gregorian was not Plaintiff's treating cardiologist.  Without a clinical or diagnostic basis for the general practitioner's cardiac assessment of Plaintiff, the Court cannot say the ALJ acted in error by discounting the weight to be accorded to Dr. Gregorian.  As set forth in the regulations, an opinion that is not based in clinical findings will not be accorded as much weight as an opinion that is well supported.  See 20 C.F.R. §§4040.1527(d)(3), 416.927(d)(3)

Moreover, Dr. Gregorian's records exhibit other inconsistencies as well.  In the evaluation form from August 13, 2003, Dr. Gregorian noted that Plaintiff could sit for only four hours in an eight hour workday, could stand and/or walk for thirty minutes at one time, and required the need to change positions from sitting to standing regularly to relieve pain (R. at 225).  On November 3, 2004, Dr.

Gregorian completed another medical form in which he stated that Plaintiff could carry and lift 10 pounds occasionally, less than 10 pounds frequently, could stand and/or walk less than two hours in an eight hour workday, could sit endlessly, and, because of Plaintiff's morbid obesity and osteoarthritis of the knees, should never climb, balance, kneel, crouch, or crawl (R. at 247-249).  Again, the Court does not disregard the possibility that Dr. Gregorian's evaluation may be correct. However, the Court will not overrule the ALJ who gave less weight to Dr. Gregorian's opinion because of the lack of medical findings to support the doctor's assessments of Plaintiff's physical capacities (R. at 225, 247-249).  Dr. Gregorian does not offer any clinical data to support his assessment regarding Plaintiff's mobility, nor does he offer findings for his assessment of osteoarthritis (R. at 248).  In fact, Plaintiff stated at his hearing that he had not received any treatment for his knees in approximately seven years (R. at 292).

Based on the foregoing, the Court finds that it was not improper for the ALJ to acknowledge Dr. Gregorian's medical assessment, but ultimately to predicate his disability determination on the objective medical results and the consistent medical opinions contained in the record (R. at 21).  It is the sole responsibility of the ALJ to weigh all of the medical evidence and resolve any material conflicts in the record.  See Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971).  The Court finds that the ALJ appropriately afforded less weight to Dr. Gregorian's assessment, which was marked with inconsistency and lacked clinical support, than he afforded the

medical opinions of two treating physicians which were supported by objective clinical findings in the record.

13.     Further, the Court does not agree with Plaintiff's contention that the ALJ's assessment of Plaintiff's residual functional capacity is unsupported by medical proof.   On the contrary, there is substantial evidence to support the ALJ's determination that Plaintiff is capable of working.   Plaintiff's treating cardiologist for over ten years, Dr. Sosa, examined Plaintiff and described his cardiac condition and overall health as "stable" (R. at 193, 194-195).   On August 6, 2001, Dr. Sosa reported that Plaintiff's chest pain was not angina and that his EKG was normal (R. at 194).   On March 27, 2002, Dr. Sosa made similar findings and reported that Plaintiff was doing well overall (R. at 193).   Another cardiologist whom Plaintiff was seeing, Dr. Rapisarda, reported Plaintiff had no ischemia or infarct, and that he had normal left ventricle function, after a nuclear stress test (R. at 217).   After a nuclear stress test on November 15, 2005, Dr. Rapisarda noted Plaintiff had moderate ischemia, but reported Plaintiff's left ventricle wall and left ventricular function were both normal (R. at 253).

Although there is some evidence to support Plaintiff's assertions that he is disabled and cannot work, there is also ample medical and other evidence to support the ALJ's finding that Plaintiff is not disabled and can work. Ultimately, the decision regarding a claimant's residual functional capacity is an issue reserved to the ALJ.   20 C.F.R. §404.1545.   Thus, the Court will not second guess the ALJ's well-supported finding that Plaintiff retained the residual

functional capacity to perform the full range of light work (R. at 23).  See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

14.    Plaintiff's second primary argument is that the ALJ erred in accepting the skills that the VE identified as transferable work skills.  Plaintiff argues that the skills identified are not transferable work skills, but are instead personal traits or qualities.  Therefore, he contends that since the ALJ deemed these traits to be transferable work skills, and relied upon these traits in the disability determination, the ALJ's decision is incorrect. The Court agrees in part.

In accordance with Step Five of the five-step process enumerated above, the ALJ must identify alternative work that Plaintiff can perform in order to make (2nd Cir. 1990); see also 20 C.F.R. §404.1560.  In making this identification, the ALJ considers Plaintiff's age, education, residual functional capacity, and transferable work skills.  See 20 C.F.R. §§404.1565, 404.1566, 404.1568.  A skill "is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level."  See SSR 82-41.  A transferable work skill exists when the skilled or semi-skilled work activities performed in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work.  See 20 C.F.R. §404.1568.

Plaintiff argues that the transferable work skills identified for him – (1) dealing with customers and the public, and (2) data management – are innate abilities or aptitudes and should not qualify as transferable work skills.  In support

of this claim, Plaintiff relies heavily on a Second Circuit decision, <u>Draegert v. Barnhart</u>, 311 F.3d 468 (2002).  In <u>Draegert</u>, a vocational expert concluded that the claimant possessed the ability to do the following: learn and apply rules and procedures which are sometimes hard to understand; use reason and judgment in dealing with all kinds of people; think clearly and react quickly in an emergency; keep physically fit; and make conclusions based on facts and on one's own personal judgment.  <u>Id</u>. at 471.  The <u>Draegert</u> court held that the skills identified were traits, absent any explanation as to how the abilities and aptitudes had been used in connection with, and refined by, the claimant's prior work and occupational experiences.  <u>Id</u>. at 476.  In the matter before this Court, Plaintiff analogizes his supposed skills to the improperly identified skills in <u>Draegert</u>.  The court agrees with the ALJ in accepting data management as a transferable work skill.  However, the Court does not find "dealing with the public" to be more than a trait in the instant circumstances.

In this matter, there is substantial evidence to support the ALJ's determination that data management is a transferable work skill.  Plaintiff worked for fifteen years as a city assessor (or clerk to an assessor) collecting information regarding the physical descriptions of properties.  Although Plaintiff did not enter his gathered data into the computer, at times he was required to make assessment evaluations of properties and to compare those properties to other comparable properties (R. at 322-24).  Plaintiff contends that the identified skill of data management is universal, and that even schoolchildren engage in data management.  However, one could hardly say that children in grade school have

the innate and natural abilities to gather and organize property descriptions, and to make evaluation assessments of those properties. Such gifted children would be few and far between. Therefore, the Court therefore finds data management to be a transferable work skill.

On the other hand, dealing with the public cannot be said to be a skill that Plaintiff has refined in his occupational experiences. The VE identified the ability to deal with people as a skill, in light of Plaintiff's past work as a real estate broker (R. at 337-338). However, the ALJ determined that Plaintiff's work as a real estate broker, in which he worked less than forty hours per month sending out mailers and checking messages, was not substantially gainful employment (R. at 17). The court fails to see how such insubstantial employment could refine Plaintiff's skill to deal with the public. Although dealing with the public may, under certain circumstances, be a work skill (see SSR 82-41: the president or chief executive officer of a business organization may need exceptional ability to deal with people), the Court is not convinced that Plaintiff's minimal human interaction as a real estate broker elevated to a transferable skill his ability to interact with the public. Because the ALJ's transferable skill determination is legally deficient, the Court will remand this case to allow the ALJ to determine whether work exists in the national economy that Plaintiff can perform without possessing a skill of dealing with the public.

15.     After carefully examining the administrative record, the Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision. Accordingly:

14

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: October 16, 2007
Albany, New York

Victor E. Bianchini
United States Magistrate Judge